UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | | |
|---|---|---|
| NATHANIEL S. ROBINSON | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 3:04-cv-540 |
| | ) | 3:02-cr-049 |
| | ) | *Jordan* |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Nathaniel S. Robinson ("Robinson"). For the following reasons, the § 2255 motion will be **DENIED** and this action will be **DISMISSED**.

I. Standard of Review

This court must vacate and set aside Robinson's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, Robinson "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."

*United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that Robinson is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.      Factual Background

Robinson pleaded guilty to distribution of five grams or more of cocaine base ("crack"), in violation of 21 U.S.C. §§ (a)(1) and (b)(1)(B)(iii). There was no plea agreement. The probation officer summarized the offense conduct as follows:

> A Confidential Source (CS) was aware that the defendant was capable of supplying ounce quantities of crack cocaine and he spoke with defendant Robinson the week of April 15, 2002. The CS provided the defendant's contact number to investigating agents. On April 22, 2002, the CS was debriefed by investigating agents who were told that the defendant met with the CS on April 20, 2002, and obtained a new contact phone number from the defendant. The defendant again reiterated to the CS that he was willing to sell the CS an ounce of crack cocaine.
>
> On April 24, 2002, the defendant went to the CS's residence and told the CS that he would deliver an ounce of crack cocaine to the CS at the CS's residence. On April 25, 2002, the CS made a consensually recorded telephone conversation with defendant Robinson who asked the CS if he was ready for

some "work." The CS told defendant Robinson that he/she was traveling from Gatlinburg, Tennessee, after gathering money and he/she would call defendant Robinson when he/she arrived home.

On April 25, 2002, the CS again made another consensually recorded telephone call to defendant Robinson informing him that the CS was at home. A few minutes later, the defendant was observed by investigating agents arriving at the CS's residence. The defendant met with the CS in the defendant's vehicle. The CS was equipped with a transmitting device which allowed the investigating agents to hear the conversation. During the conversation, the defendant wanted the CS to "front" the money to him so that he could go and buy the crack cocaine. The CS refused this request and the defendant agreed to get the crack cocaine without any money. The CS was observed exiting defendant Robinson's vehicle and the defendant departed the area. Approximately thirty minutes later, the defendant was observed, by investigating agents, arriving at the CS's residence again. The defendant exited the vehicle and walked into the entryway of the apartment complex. The defendant and the CS met and defendant Robinson sold the CS approximately 24 grams of crack cocaine for $900. The CS gave defendant Robinson money provided by the Drug Enforcement Administration (DEA) in which the serial numbers were recorded.

After the transaction, the defendant was observed exiting the entryway and return [sic] to his vehicle and depart [sic] the area. Approximately two minutes later, a marked Knoxville Police Department patrol unit affected a traffic stop on defendant Robinson. Pursuant to a search incident to arrest, Knoxville Police Department investigator Todd Gilreath found the $900, in the defendant's right front pocket, that the CS gave to the defendant for payment of the crack cocaine.

Laboratory tests revealed the cocaine base had a weight of 22.6 grams.

[Criminal Action No. 3:02-cr-49, Presentence Investigation Report, pp. 3-4, ¶¶ 7-11].

Robinson was sentenced to a term of imprisonment of 193 months. That included a downward departure of approximately 100 months based upon the government's motion for a downward departure for substantial assistance.

In support of his motion to vacate sentence, Robinson alleges the following: (1) he was illegally sentenced based upon an incorrect quantity of cocaine base and based upon an incorrect application of the guidelines with respect to his career offender status; (2) he was indicted for the wrong substance; (3) he was subjected to career offender status in violation of the Fifth and Sixth Amendments; (4) his criminal history was miscalculated; and (5) he received ineffective assistance of counsel.

III. Discussion

### A. Quantity of Cocaine and Career Offender Status

The Drug Quantity Table specifies a base offense level of 28, for distribution of at least 20 grams but less than 35 grams of cocaine base. U.S.S.G. § 2D1.1(c)(6). Robinson was held responsible for 22.6 grams of cocaine base. Accordingly, the probation officer assigned Robinson a base offense level of 28. [Criminal Action No. 3:02-cr-49, Presentence Investigation Report, p. 5, ¶ 16].

Robinson alleges he should have been held responsible for only 4.5 grams of cocaine base, with a resulting base offense level of 24. U.S.S.G. § 2D1.1(c)(8). In support of this allegation, Robinson has attached a copy of the DEA laboratory report which shows the cocaine base was comprised of 4.5 grams of pure drug and 21.8 grams of reserve. [Court

File No. 1, Motion to Vacate Sentence, Exhibit 1]. Robinson argues he should have been held responsible for only the net amount of the pure cocaine base.

This allegation lacks merit. As the statute under which Robinson was convicted states, it is illegal to distribute "5 grams of more of a *mixture* or substance ... which contains cocaine base." 21 U.S.C. § 841 (b)((1)(B)(iii) (emphasis added). Thus Robinson was correctly sentenced as to the total weight of the cocaine base. *See, e.g., United States v. Jinadu*, 98 F.3d 239, 250 (6th Cir. 1996) ("defendant's argument that purity instead of scale weight should be the standard has no merit").

In any event, the determination of a base offense level of 28, for distribution of at least 20 grams but less than 35 grams of cocaine base, was immaterial. Because Robinson was determined to be a career offender, the base offense level under that subsection applied, since it was greater than the offense level otherwise applicable. *See* U.S.S.G. § 4B1.1(b).

Based upon his criminal history, Robinson was determined to be a career offender pursuant to U.S.S.G. § 4B1.1(a). Because the statutory maximum term of imprisonment authorized for his offense was life, Robinson's base offense level was 37. *Id.* § 4B1.1(b)(A). Robinson contends that the statutory maximum term of imprisonment for his violation of 21 U.S.C. § 841(b)(1)(B)(iii) was 40 years and thus his base offense level should have been only 34. U.S.S.G. § 4B1.1(b)(B). This allegation also lacks merit.

While its true that § 841(b)(1)(B)(iii) provides a general "term of imprisonment which may not be less than 5 years and not more than 40 years," that section also requires a "term of imprisonment which may not be less than 10 years and not more than life imprisonment"

5

for a person such as Robinson who had "a prior conviction for a felony drug offense." *Id*. Accordingly, Robinson's base offense level as a career offender of 37 was properly calculated.

### B. Indictment for Cocaine Base

Robinson alleges that he may have been mistakenly indicted for the wrong substance. According to Robinson, there is no proof that he distributed "crack" cocaine as it is defined in the sentencing guidelines. "'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c) (Note D to Drug Quantity Table).

Robinson refers to the DEA laboratory report, which shows the drug submitted for testing contained "cocaine base, nicotinamide." [Court File No. 1, Motion to Vacate Sentence, Exhibit 1]. He argues that, because there is no reference to sodium bicarbonate, the drug was not necessarily crack cocaine, but might have been powder cocaine. Robinson pleaded guilty, however, to selling 22.6 grams of crack cocaine. [Criminal Action No. 3:02-cr-49, Court File No. 74, Transcript of Proceedings, pp. 10-11]. As noted in subsection III., *E*. of this opinion, *infra*, Robinson cannot now challenge his plea to selling crack cocaine.

## C. Career Offender Status / Blakely

Robinson alleges he was subjected to career offender status in violation of the Fifth and Sixth Amendments because his status was not charged in the indictment nor submitted to a jury and proved beyond a reasonable doubt. He relies on the U.S. Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004). At this time, there is no reason to apply *Blakely* retroactively to a § 2255 motion such as Robinson's. *See, e.g., In Re Dean*, 375 F.3d 1287 (11th Cir. 2004). "No court has yet determined whether *Blakely* created a new rule of constitutional law made retroactive to cases on collateral review." *Id*. at 1290 (citation omitted). In addition, any claim pursuant to *Blakely* is now governed by the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005), which applied the reasoning in *Blakely* to the federal sentencing guidelines.

In *Booker*, the Court noted that its holding should be applied "to all cases on direct review." 543 U.S. at 268. The Court did not state that the holding should be applied retroactively on collateral review of cases in which the judgment has become final. In fact, the Court quoted *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), for the proposition that "'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" *Id*. The Sixth Circuit has held that *Booker* "does not apply retroactively in collateral proceedings." *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir.), *cert. denied*, 126 S. Ct. 199 (2000).

### D. Criminal History

Robinson alleges his criminal history was miscalculated by the probation officer. He claims that he erroneously received three points, instead of the maximum two points, for the one year sentence he received in Knox County, Tennessee, in Case No. 38399, for attempt to commit the felony sale of cocaine. Robinson is mistaken; he actually received no criminal history points for this conviction. [Criminal Action No. 3:02-cr-49, Presentence Investigation Report, p. 6, ¶ 28]. In any event, Robinson admits that the alleged one-point difference is immaterial, since he is a career offender. This claim is frivolous.

### E. Ineffective Assistance of Counsel

Robinson alleges several instances of ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970),

Robinson must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, Robinson bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Over the course of the criminal litigation, Robinson was represented by four attorneys. He was first represented by Paula Voss, with the Federal Defender Services of Eastern Tennessee, Inc., who filed numerous motions on his behalf. Bruce E. Poston was subsequently retained to represent Robinson. Mr. Poston later moved to withdraw as counsel and Mike Whalen was appointed to represent Robinson. After Robinson pleaded guilty, he filed a *pro se* motion to withdraw his plea and for appointment of new counsel. The motion for appointment of new counsel was granted and Donny Young was then appointed to

9

represent Robinson. The government subsequently filed a motion for downward departure and Robinson withdrew his motion to withdraw his guilty plea.

Robinson first alleges that Mike Whalen coerced him into pleading guilty. The Court of Appeals for the Sixth Circuit has held that a defendant's sentence will not be vacated on the ground that the plea of guilty was coerced where the defendant was "carefully interrogated by the trial judge with respect to the offenses committed," where the defendant was represented by "competent counsel," and where the defendant "discussed the offenses freely and voluntarily and freely admitted guilt, while fully aware of [his] rights." *United States v. Parker*, 292 F.2d 2,3 (6th Cir. 1961).

In accepting Robinson's guilty plea, this court fully complied with the plea colloquy procedure as mandated by Rule 11 of the Federal Rules of Criminal Procedure. The court first determined that Robinson understand the indictment and the charge against him. [Criminal Action No. 3:02-cr-49, Court File No. 74, Transcript of Proceedings, pp. 6-7]. The court next advised Robinson of the rights he was giving up by pleading guilty. [*Id.* at 8-9]. The court then specifically asked Robinson the following: "Mr. Robinson, has any person including an officer of agent of the government, put any pressure on you mentally or physically to force you to plea guilty?" [*Id.* at 9]. Robinson answered: "No." [*Id.*]. Finally, Robinson acknowledged that he was pleading guilty to distribution of crack cocaine because he was in fact guilty. [*Id.* at 11].

It is well-settled that where a court scrupulously follows the requirements of Fed. R. Crim. P. 11, "'the defendant is bound by his statements in response to that court's inquiry.'"

*Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). *See also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (defendant's "decision to lie to the district court cannot amount to prejudice"). Accordingly, petitioner cannot now allege that his guilty plea was coerced by Mr. Whalen. The issue is without merit.

Robinson next alleges that Donny Young perpetuated the coercion began by Mr. Whalen, despite Robinson's desire to go to trial. Robinson's allegations are again contradicted in the record. Robinson's guideline sentence range was 292 to 365 months. This was based upon a total offense level of 35, which included a two-level reduction for acceptance of responsibility, and a criminal history category of VI as a career offender. As a result of his guilty plea and resulting substantial assistance, the government moved for a downward departure to a sentence of 193 months. At sentencing, Robinson was again questioned by the court as to his wish to persist in his guilty plea. He acknowledged his desire to plead guilty and accept the government's offer. [Criminal Action No. 3:02-cr-49, Court File No. 81, Transcript of Proceedings, pp. 3-5].

At no time during sentencing did Robinson state that he wished to withdraw his guilty plea, and he cannot now claim that he was coerced into continuing in his plea of guilty. It is clear that he reaped the benefits of pleading guilty. Based upon the foregoing, Robinson has failed to state a claim of ineffective assistance of counsel under the standard set forth in *Strickland*.

IV. Conclusion

Robinson is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. In addition to the above, this court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** Robinson leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Robinson having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

         s/ Leon Jordan         
United States District Judge